*HHN*

FILED

NF;

DEC 03 2007

12-3-2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADVANCE HEAT PRODUCTS LTD.,    )
a Hong Kong corporation,        )
                                )    07CV6784
          Plaintiff,            )    JUDGE LINDBERG
                                )    MAGISTRATE JUDGE VALDEZ
     v.                         )
                                )
JAMES D. KOSKEY, JR. and K&H    )
MANUFACTURING, LLC, a           )
Delaware limited liability company, )
                                )
          Defendants.           )

## COMPLAINT

Plaintiff, Advance Heat Products Ltd. ("Advance"), by its attorneys and for its complaint against Defendants, K&H Manufacturing, LLC ("K&H") and James D. Koskey, Jr. ("Koskey"), states as follows:

### Parties

1.    Advance is a corporation organized under the laws of Hong Kong and having its registered office at 19th Floor, Million Fortune Industrial Centre, 34-36 Chai Wan Kok Street, Tsuen Wan, New Territories, Hong Kong, and its principal place of business in the People's Republic of China.

2.    K&H is a limited liability company with its principal place of business in Colorado Springs, Colorado. The members of K&H are Koskey and Frank Wesley Howard, Jr.

3.    Koskey is an individual and a citizen of the State of Colorado.

4.    Frank Wesley Howard Jr. is an individual and a citizen of the State of Colorado.

## Jurisdiction And Venue

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(4), because Plaintiff Advance is a citizen of a foreign state (Hong Kong) and Defendants K&H and Koskey are citizens of a State (Colorado), and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because K&H resides in this district for the purpose of determining venue pursuant to 28 U.S.C. § 1391(c), by virtue of its conducting business and having significant contacts in this district.  K&H is therefore subject to personal jurisdiction in this district at the time this action was commenced.

7.      This Court also has personal jurisdiction over Koskey as a result of his doing business in this district, including regular trips to this district to conduct the business of K&H.

## Facts Common To All Counts

8.      Advance is a company that provides a full range of electrical heating products and parts, including temperature control thermostats, heating appliances, seat heaters, heated pads, heated pet beds and mats.  Advance also provides product assembly services.

9.      Advance operates a manufacturing facility in Qingxi Township, Dongguan City, Dongguan, People's Republic of China.

10.     Between April 1, 2001 and March 27, 2007, Eric Kong Yau Ming ("Kong") worked for Advance as a manager of Advance's manufacturing facility.  Kong resigned from Advance on March 27, 2007.

11.     As manager of Advance's manufacturing facility, Kong was a member of the senior management team of Advance, and had access to confidential information belonging to Advance.

2

12.     From April 10, 1995 through March 31, 2001, Kong had been employed by Advance Thermo Control, Ltd. ("ATC"), an affiliate of Advance.

13.     While employed by ATC, Kong executed an employment contract with ATC, entitled Supplementary Employment Contract (the "Contract"). A true and correct copy of the Contract is attached as Exhibit A.

14.     The Contract also governed Kong's employment with Advance.

15.     The relevant portions of the Contract state as follows:

    a.     The "employee," from the commencing date to the last date of employment, during or outside office hours, all rights of inventions, designs, & know-how which the "employee" develops in relation to the "employer's" field or scope of business belong forever exclusively to the "employer."

    b.     In consideration for "employer" paying employee for developing trade secret, employee agrees not to work for other company producing product or service competing with "employer" during employment & within 12 months after future termination with Advance Thermo Control Ltd.

    c.     "Employee" has duty to protect and to keep confidential "employer's" business confidential information & technical information & rights, written or non-written, including inventions, designs, know-how, parts, products, process, customers, suppliers etc.

    d.     "Employee" has the following duties:

        a)     to collect back all above-mentioned documents & samples relating to above from sub-contractors or potential buyers for sub-contract or quotation or marketing purposes.

        b)     to return to "employer" all copies of above-mentioned documents in "employee's" possession on employment termination.

Exhibit A, § A (1)-(4).

3

16.    The non-competition clause in the Contract is reasonable both in scope and duration.

17.    The Contract also contained the implied terms that Kong owed to Advance the duty of fidelity, and that Kong would not use or disclose any of Advance's confidential information, such as the Trade Secrets, upon termination of his employment with Advance.

18.    During Kong's employment with Advance, K&H was a customer of Advance. Koskey is the president and a member of K&H.

19.    Kong and Koskey became acquainted through K&H's customer relationship with Advance and Kong's employment with Advance.

20.    Upon information and belief, in the first quarter of 2006, almost a year before Kong resigned from his position as a senior manager of Advance, Koskey approached Kong about jointly forming a new company, so that K&H could purchase products from the new company, rather than Advance. Kong and Koskey agreed that this new company would develop new products for K&H, as well as produce products for K&H that K&H had previously contracted to buy from Advance.

21.    On January 15, 2007, months before Kong resigned from Advance, Kong and Koskey incorporated in Hong Kong a new company, Sinoethics-United Limited ("Sinoethics"), with a manufacturing plant in China. Like the Advance manufacturing facility, the Sinoethics manufacturing facility is also located in Qingxi Township, Dongguan City, Dongguan, People's Republic of China.

22.    Kong and Koskey are the founders and co-owners of Sinoethics, the sole capital contributors to Sinoethics, and the sole shareholders of Sinoethics. Koskey holds 5,000 shares and Kong holds 4,999 shares.

23.    Sinoethics competes directly with Advance. Sinoethics manufactures the same types of products as Advance and has manufactured products for long-standing customers of Advance, including K&H.

24.    In breach of the non-competition clause of the Contract, Kong holds the executive position of General Manager of Sinoethics.

25.    While Kong was still employed at Advance, and thereafter, he misappropriated secret and confidential information and data from Advance for use by Kong and Sinoethics and its affiliates, subsidiaries and related companies ("Sino"), including but not limited to, customer lists, pricing information, proprietary technology, and costs and other financial information (collectively, the "Trade Secrets").

26.    Kong misappropriated the Trade Secrets with the knowledge of Koskey and K&H, and, upon information and belief, at the request of Koskey.

27.    Included in the Trade Secrets misappropriated by Kong is the circuitry of an adjustable digital temperature control used in a heated dog bed which is marketed and sold by K&H under the name "Deluxe Lectro-Kennel" (the "DLK").

28.    Through Koskey, K&H initially pursued the development of the DLK with Advance. In July 2006, Advance provided K&H with quotations for the DLK. In or around August to September 2006, Advance provided K&H with samples of the DLK, incorporating the electrical and electronic components of the DLK.

29.    In or around October 2006, Advance was informed that K&H thought that the price of the DLK was too high and that K&H therefore no longer wished to purchase the DLK from Advance.

30.     Instead, without the knowledge or consent of any Advance management other than his confederate Kong, Koskey requested that Kong personally continue to develop the software and circuitry of the DLK for K&H, even though Kong was still employed at Advance. Upon information and belief, Koskey made this request, knowing that Kong would be using Advance's resources to continue to develop the DLK for K&H, including copying the software and circuitry from the samples made by Advance's engineers in or about August to September 2006.

31.     The Advance resources relied upon by Kong to develop and produce the DLK for K&H include, but are not limited to, the following:

> a.     Jack Chen ("Chen"), engineering supervisor with Advance at all relevant times, created the engineering drawings of the base and cover pad of the DLK, in the course of his employment with Advance and at the Advance manufacturing facility.
>
> b.     Chow Kwok Wai ("Chow"), head engineer with Advance at all relevant times, in conjunction with his team of engineers, created the "Schematic Circuit Diagram" for the DLK, in the course of his employment with Advance and at the Advance manufacturing facility.
>
> c.     Prototypes and samples of the DLK were created by employees of Advance in the course of their employment with Advance and at the Advance manufacturing facility.
>
> d.     3-Dimensional renderings of the DLK were created by employees of Advance in the course of their employment with Advance and at the Advance manufacturing facility.
>
> e.     Thor Zhang ("Zhang"), an engineer with Advance at all relevant times, created drawings of display boxes for the DLK, in the course of his employment with Advance and at the Advance manufacturing facility.
>
> f.     The bill of materials for the DLK was created by employees of Advance in the course of their employment with Advance and at the Advance manufacturing facility.

32.     In or around December 2006, months before his departure from Advance, Kong used Advance's Trade Secrets to produce the molds, software and tooling necessary for the

production of the DLK, but used it to enable Sinoethics, rather than Advance, to produce, sell, and supply the DLK to K&H.

33.     Through Sinoethics, Kong then sold the DLK to K&H without the knowledge or consent of Advance. Proceeds from the sale to K&H of the DLK were not paid to Advance, but instead were paid to Kong and Sinoethics. Upon information and belief, Kong sold the DLK to K&H while he was still employed at Advance.

34.     In 2006, while Kong was still employed at Advance, Kong, on behalf of Sinoethics, and at the behest of Koskey, misappropriated the tooling and molds for a heated plant pot (the "Plant Heater"), which Kong and Sinoethics then sold to a customer of K&H, without the knowledge or consent of Advance, and without turning the sales proceeds over to Advance.

35.     Also in 2006 and 2007, while Kong was still employed by Advance, Kong developed and sold additional heating products and parts at the direction of Koskey and on behalf of Sinoethics. These heating products and parts remain the property of Advance.

36.     Without the consent of Advance, Kong and Sinoethics also used tooling and molds owned by Advance to make parts to fill orders placed by K&H with Sinoethics.

37.     Kong's incorporation and operation of Sinoethics as a competitor of Advance, and Kong's use of the Trade Secrets in the operation of Sinoethics are in violation of the Contract.

**COUNT I**
**Violation of the Illinois Trade Secrets Act**

38.     Plaintiff re-alleges paragraphs 1-37 as paragraph 38 of its Count I.

39.     The Trade Secrets used in the manufacture of, among other products, the DLK, are trade secrets under section 2 of the Illinois Trade Secrets Act (the "Act").

40.     Kong's misappropriation and use of the Trade Secrets to manufacture, among other products, the DLK, is a violation under section 2 of the Act.

41.    Through sales of the DLK, among other things, Koskey is using the Trade Secrets to benefit K&H and by doing so, Koskey and K&H are using the Trade Secrets in K&H's business in violation of the Act.

42.    Koskey knew or had reason to know that he and K&H were using the misappropriated Trade Secrets in K&H's business.

43.    Koskey and K&H have willfully and maliciously misappropriated the Trade Secrets for their own gain.

44.    Advance has been damaged by Koskey and K&H's misappropriation of its Trade Secrets in an amount in excess of $75,000.00.

WHEREFORE, Advance asks this Court to enter judgment in favor of Advance and against all Defendants:

a)    Enjoining Defendants pursuant to section 3 of the Act, ordering  Koskey and K&H to immediately cease their use of any and all Trade Secrets, including but not limited to those Trade Secrets used in the manufacture of the DLK;

b)    Requiring Defendants to return, delete and/or destroy any Trade Secrets that are in the possession of Koskey or K&H, including but not limited to the Trade Secrets used in the manufacture of the DLK;

c)    Ordering Koskey and K&H to cease purchasing any product from Sino manufactured using any of the Trade Secrets, including but not limited to the Trade Secrets used in the manufacture of the DLK;

d)    Awarding Advance actual damages pursuant to section 4(a) of the Act, in an amount to be determined at trial commensurate with the actual loss to Advance and the unjust enrichment to the defendants caused by the misappropriation;

e) Awarding Advance exemplary damages pursuant to section 4(b) of the Act in the amount of twice the actual damages awarded under section 4(a) of the Act;

f) Awarding Advance its attorneys' fees pursuant to section 5 of the Act; and

g) Awarding Advance its costs and any further relief that this Court deems appropriate and just.

**COUNT II**
**Tortious Interference With Contract**

45. Plaintiff re-alleges paragraphs 1-37 as paragraph 45 of its Count II.

46. On information and belief, in 2006, Koskey and K&H knew or should have known that Kong was then employed by Advance and knew of the Contract and its terms.

47. Specifically, Koskey and K&H knew or should have known that Kong was prohibited from using assets of Advance for the benefit of Sino.

48. Additionally, Koskey and K&H knew or should have known that the creation of Sino while Kong was still employed with Advance was in breach of the Contract.

49. By ordering products directly from Kong in 2006, Koskey and K&H intentionally interfered with the Contract and unjustifiably induced Kong to breach the Contract.

50. Kong breached the Contract when he, for his own personal benefit, supplied Koskey and K&H with products manufactured using the Trade Secrets, including but not limited to the DLK, in contravention of the requirement under the Contract that "all rights of inventions, designs, & know-how which the "employee" develops in relation to [Advance's] field or scope of business belong forever exclusively to [Advance]." Exhibit A, § A(1).

51. The Contract's non-compete provision prohibits Kong from working for any "other company producing product or service competing with [Advance] during employment & within 12 months after future termination with [Advance]." Exhibit A, § A(2).

52.     By working with Kong to establish Sino to directly compete with Advance while Kong was still employed with Advance, Koskey intentionally interfered with the Contract and unjustifiably induced Kong to breach the Contract.

53.     By continuing to operate Sino with Kong, Koskey continues to intentionally interfere with the Contract and unjustifiably induce Kong's continued and ongoing breach of the Contract.

54.     Advance has been damaged by Kong's past and ongoing breaches of the Contract in an amount in excess of $75,000.00.

WHEREFORE, Advance respectfully requests this Court enter judgment in its favor and against Defendants damages in amount to be determined at trial and award Advance its cost of this litigation.  Plaintiff additionally requests costs and any further relief that this Court deems appropriate and just.

## COUNT III
### Civil Conspiracy

55.     Plaintiff re-alleges paragraphs 1-44 as paragraph 55 of its Count III.

56.     Kong and Koskey agreed to form Sino.

57.     Sino operates by unlawful means, namely the theft of the Advance's Trade Secrets and Kong's breach of the Contract.

58.     Sino continues to improperly and illegally utilize the Trade Secrets for its own financial gain.

59.     In order to operate Sino, Kong stole Trade Secrets and breached the Contract.

60.     Kong and Koskey have used Advance's Trade Secrets to conduct the business of Sino.

61.   Koskey and K&H knew that Sino was using the misappropriated Trade Secrets, and, in fact, upon information and belief, encouraged Kong to misappropriate the Trade Secrets for Sino, Koskey, and K&H's benefit.

62.   Because Koskey is involved in the continued operation of Sino, he is liable as a civil conspirator for the damages resulting for the misappropriation of the Trade Secrets as well as the damages resulting from Kong's breach of the Contract.

63.   Additionally, K&H is liable as a civil conspirator because K&H, through Koskey, conspired with Kong to misappropriate proceeds from the sale of Advance products which should have gone to Advance.

64.   K&H, among other things, knowingly abandoned pursuit of the DLK with Advance, and instead convinced Kong to produce the DLK with Advance's resources, so that K&H could get a better price as a result of Kong and Koskey's forming Sinoethics.

65.   K&H also began purchasing products from and pursuing projects through Sinoethics which it had previously purchased from Advance, knowing that Sinoethics was utilizing materials and Trade Secrets which had been misappropriated by Kong and Koskey from Advance.

WHEREFORE, Advance respectfully requests this Court enter judgment in its favor and against Defendants damages in amount to be determined at trial and award Advance its cost of this litigation.   Plaintiff additionally requests costs and any further relief that this Court deems appropriate and just.

## **Jury Demand**

Plaintiff hereby demands a trial by jury on all counts.

Respectfully submitted,

ADVANCE HEAT PRODUCTS LTD.

By: _Donald R. Cassling_

One of Its Attorneys

Donald R. Cassling
dcassling@quarles.com
Charles E. Harper, Jr.
charper@quarles.com
Jacquelyn T. Pinnell
jpinnell@quarles.com
QUARLES & BRADY LLP
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 715-5000
(312) 715-5155 (fax)

QBCHI\538070.9

# Exhibit A



# ADVANCE HEAT PRODUCTS LIMITED

19TH Floor, Million Fortune Ind Centre, 34-36 Chai Wan Kok Street, Tsuen Wan, N.T. Hong Kong.

2nd April 2001

Mr Eric Kong Yau Ming,
C/O Advance Thermo Control Limited.

Dear Eric,

Following your secondment from Advance Thermo Control Limited ("ATC") to our Company in October 2001 as acting China factory manager, we noted that you have carried out your responsibilities with good ability. Therefore, it is with great pleasure that we advise you of your official transfer from ATC to our Company as China factory manager with effect from 1st April 2001. Commencing from May 2001, your monthly salary will be increased to HK$20,000.00. Please note that your six years employment service with ATC will be carried over and taken into account in your employment with our Company.

We wish you a happy and productive stay with us.

Yours sincerely,

K S Cheng
Director

May. 21, 2001

# Advance Thermo Control Ltd.

19th Floor, Million Fortune Ind. Centre, Nos. 34-36 Chai Wan Kok Street, Tsuen Wan, N.T., Hong Kong.
Tel : (852) 2498 7465    Fax : (852) 2413 3080

Supplementary & an integral agreement to Employment Contract dated 27-June-95.

I, Kong Yau Ming (Eric), HKID Card # K508644(2), hereinafter called "employee" being employed by Advance Thermo Control Ltd., hereinafter called "employer", hereby agree to be legally bound in the following :

## (A)   Protection of "employer's" interest.

1. The "employee", from the commencing date to the last date of employment, during or outside office hours, all rights of inventions, designs, & know-how which the "employee" develops in relation to the "employer's" field or scope of business belong forever exculsively to the "employer".

2. In consideration for "employer" paying employee for developing trade secret, employee agrees not to work for other company producing product or service competing with "employer" during employment & within 12 months after future termination with Advance Thermo Control Ltd.

3. "Employee" has duty to protect and to keep confidential "employer's" business confidential information & technical information & rights, written or non-written, including inventions, designs, know-how, parts, products, process, customers, suppliers etc.

4. "Employee" has the following duties :

   a)  to collect back all above-mentioned documents & samples relating to above from sub-contractors or potential buyers for sub-contract or quotation or marketing purposes.

   b)  to return to "employer" all copies of above-mentioned documents in "employee's" possession on employment termination.

Employee's violation to have duties during employment or infringement of above rights after employment, either directly or indirectly is actionable in Court, and is liable to termination without notice or compensation.

## (B)   Conflict of interest.

"Employee" is not allowed to have any conflict of interest against "employer" during employment, otherwise employment is terminated automatically without notice or compensation in lieu of notice, and "employee" has to surrender to "employer" such interest or benefits derived.

Employee's signature

Name :  Kong Yau Ming, Eric
Date  :  27-June-95

Employer's signature

Advance Thermo Control Ltd.
Mr. T.Y.Lam
Administration

# Advance Thermo Control Ltd.

19th Floor, Million Fortune Ind. Centre, Nos. 34-36 Chai Wan Kok Street, Tsuen Wan, N.T., Hong Kong.
Tel : (852) 2498 7465 , Fax : (852) 2413 3080

## EMPLOYMENT CONTRACT

Dear Mr. Kong Yan Ming (Eric),

We are pleased to offer you the employment in our Company under the following terms and conditions :

**Joining date** : 10-Apr-95.

**Present position** : Draftsman (Engineering Dept.)

**Basic salary** : HK$ 7,000.00 per month, all necessary overtime pay included.
Your salary will be paid by auto-transfer to your personal bank accounts at the 20th of each month except for the first month's salary.

**Probationary period** : Probation is counted as 3 months from the joining date.

**Salary review** : Salary review is normally carried out once a year where the Company's profit, staff performance and the consumer price index would be taken into consideration. Under special circumstances, such as promotion, interim salary adjustment may be made during the year.

**Double Pay** : You are entitled to a Double Pay before each Chinese New Year which consists of one month of your basic salary. This will be paid after completion of one year employment. For the first year, your Double Pay will be pro-rated to the number of months employed. No Double Pay will be given, if employment is less than one calendar month before Double Pay cut-off time. Should the employment terminates before Double Pay cut-off time, the Double Pay will be granted according to labour ordinance. (Double Pay cut-off time means the last day of each year.)

**Bonus** : The Company may or may not be issued a non-guaranteed Bonus to individual staff who has worked as a permanent staff with satisfactory performance.

**Working hours** : Monday through Friday ———— 8:30 a.m. to 5:30 p.m.
Saturday ———————— 8:30 a.m. to 12:30 p.m.
Lunch time ——————— 12:30 p.m. to 1:30 p.m.

**Annual leave** : After the completion of one year's service with this Company, you are entitled to 10 days annual leave with pay. This annual leave will be increased by one day per each service year to a maximum of 14 days. Staffs should apply 4 weeks in advance for any leave of more than 4 days, and subject to approval by management.
On termination of employment contract for whatever reasons, including resignation, but excluding reasons of disciplinary dismissal, for each years' employment reaching 3 months, but less than 12 months, employee will be paid a pro-rata sum in lieu of annual leave equivalent to entitled annual leaves' pay multiply the number of completed calendar days. For disciplinary dismissals, annual leave will be granted according to labour ordinance.

**Sick leave** : You are only entitled to sick leave by submit a sick leave certificate issued by registered doctors to the Company. Otherwise, the leave may not be paid.

Page 1

# Advance Thermo Control Ltd.

19th Floor, Million Fortune Ind. Centre, Nos. 34-36 Chai Wan Kok Street, Tsuen Wan, N.T., Hong Kong.
Tel : (852) 2498 7465    Fax : (852) 2413 3080

| | |
|---|---|
| Medical benefits scheme : | After 3 months' probationary period, you are entitled to enter into our Company's medical scheme. For more details, please refer to the Medical Insurance Policy. |
| Change of personal details : | Employees are obliged to advise the Company immediately of any change in their personal details. |
| Termination of employment : | During the first month of probationary period, termination could be at anytime without notice or payment in lieu of notice. After one month service, termination must be notified to the other party 14 days in advance, (Sundays & Holidays inclusive) or payment in lieu of notice. After probation, termination must be notified to the other party one month in advance, (Sunday & Holidays inclusive) or payment in lieu of notice. Employees who defraud the discipline of work will be dismissed without notice or payment in lieu of notice, Annual leave is not counted as notice. |

In confirming the employment, we shall appreciate your signing the copy of this letter. We look forward to a long & beneficial association with you.

Employment accepted by

Name : Kong Yan Ming, Eric
Date :  27 June, 1995.

Advance Thermo Control Ltd.

Mr. T.Y.Lam
Administration

Page 2