IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADVANCE HEAT PRODUCTS LTD., a Hong Kong corporation, <br><br> Plaintiff, <br><br> v. <br><br> JAMES D. KOSKEY, JR., and KOSKEY & HOWARD, INC. f/k/a K&H MANUFACTURING, INC., a Colorado corporation, and K&H MANUFACTURING, LLC, a Delaware limited liability company, <br><br> Defendants. | No. 07 C 6784 <br><br> Judge George W. Lindberg <br> Magistrate Judge Maria Valdez |

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants James D. Koskey, Jr. ("Koskey"), Koskey & Howard, Inc. f/k/a K&H Manufacturing, Inc. ("K&H Corporation") and K&H Manufacturing, LLC ("K&H LLC"), by their attorneys Ice Miller LLP, answering Plaintiff Advance Heat Products Ltd.'s ("Advance") First Amended Complaint, states as follows:

**Parties**

1.   Advance is a corporation organized under the laws of Hong Kong and having its registered office at 19th Floor, Million Fortune Industrial Centre, 34-36 Chai Wan Kok Street, Tsuen Wan, New Territories, Hong Kong, and its principal place of business in the People's Republic of China.

ANSWER:   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the First Amended Complaint and therefore deny the same.

2.   K&H Corporation is a Colorado corporation with its principal place of business at 977 Ford Street, Colorado Springs, CO 80915. In May 2007, K&H Corporation changed its name from K&H Manufacturing, Inc. to Koskey & Howard, Inc.

ANSWER:   Defendants admit the allegations of Paragraph 2 of the First Amended Complaint, except deny that the address is correct.

3. In May 2007, K&H Corporation sold its real estate holdings to KTPS Real Estate Holdings, LLC ("KTPS").

ANSWER: Defendants deny the allegations of Paragraph 3 of the First Amended Complaint.

4. Also in May 2007, K&H Corporation sold its remaining business assets to K&H LLC, which is a subsidiary of KTPS.

ANSWER: Defendants deny the allegations of Paragraph 4 of the First Amended Complaint.

5. Koskey remained the President of K&H LLC. K&H LLC conducts business out of the same building as K&H Corporation, K&H LLC engages in the sale of the same pet products as K&H Corporation, and the two companies use the same web address.

ANSWER: Defendants admit the allegations of Paragraph 5 of the First Amended Complaint.

6. K&H LLC is the successor-in-interest to K&H Corporation.

ANSWER: Defendants deny the allegations of Paragraph 6 of the First Amended Complaint.

7. K&H LLC is a Delaware limited liability company with its principal place of business in Colorado Springs, Colorado.

ANSWER: Defendants admit the allegations of Paragraph 7 of the First Amended Complaint.

8. Koskey is an individual and a citizen of the State of Colorado.

ANSWER: Defendants admit the allegations of Paragraph 8 of the First Amended Complaint.

9. Because the allegations in the First Amended Complaint began prior to May 2007 and are ongoing, the allegations implicate and include both K&H Corporation and K&H LLC. Additionally, K&H LLC is not only liable for its ongoing tortuous activities as set forth in the First Amended Complaint, but also as successor-in-interest to K&H Corporation.

ANSWER: Defendants deny the allegations of Paragraph 9 of the First Amended Complaint.

10. Hereinafter, K&H Corporation and K&H LLC will be collectively referred to as "K&H."

ANSWER: Defendants admit that Plaintiff purports to call two separate legal entities, "K&H," but deny that the two legal entities are the same or that "K&H Corporation" and "K&H LLC" should both be called "K&H."

## Jurisdiction and Venue

11. This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1332(a)(4), because Plaintiff Advance is a citizen of a foreign state and Defendants K&H Corporation, K&H LLC, and Koskey are citizens of a States, and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

ANSWER: Defendants deny the allegations of Paragraph 11 of the First Amended Complaint to the extent that they allege an amount in dispute in excess of $75,000. Defendants admit the remaining allegations of Paragraph 11.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because K&H Corporation and K&H LLC reside in this district for the purpose of determining venue pursuant to 28 U.S.C. § 1391(c), by virtue of their conducting business and having significant contracts in this district. K&H Corporation and K&H LLC are therefore subject to personal jurisdiction in this district at the time this action was commenced.

ANSWER: Defendants deny the allegations of Paragraph 12 of the First Amended Complaint.

13. This Court also has personal jurisdiction over Koskey as a result of his doing business in this district, including regular trips to this district to conduct the business of K&H.

ANSWER: Defendants deny the allegations of Paragraph 13 of the First Amended Complaint.

## Facts Common To All Counts

14. Advance is a company that provides a full range of electrical heating products and parts, including temperature control thermostats, heating appliances, seat heaters, heated pads, heated pet beds and mats. Advance also provides product assembly services.

ANSWER: Defendants deny the allegations of Paragraph 14 of the First Amended Complaint.

3

15. Advance operates a manufacturing facility in Qingxi Township, Dongguan City, Dongguan, People's Republic of China.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the First Amended Complaint and therefore deny the same.

16. From April 10, 1995 through March 31, 2001, Eric Kong Yau Ming ("Kong") had been employed by Advance Thermo Control, LLC ("ATC"), an affiliate of Advance.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the First Amended Complaint and therefore deny the same, except admit that Kong had been employed by ATC.

17. Beginning in October 2000, through March 31, 2001, Kong was seconded from ATC to Advance to work as the acting factory manager of Advance's manufacturing facility. During this time, Kong also continued to be employed at ATC, and ATC paid Kong's salary and other employment benefits for the services he did for Advance.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the First Amended Complaint and therefore deny the same.

18. On April 1, 2001 Kong became an employee of Advance. From April 1, 2001 through March 27, 2007, Kong worked for Advance as a factory manager of Advance's manufacturing facility. Kong resigned from Advance on March 27, 2007.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the First Amended Complaint and therefore deny the same.

19. For ease of administration, ATC would administer the payment of salaries and other employment benefits for all Advance employees, including Kong. ATC would then recoup from Advance the amount of the salaries and other employment benefits it paid to Advance employees. Thus, although Kong's salary and other employment benefits were still issued from ATC, from April 1, 2001 through the duration of Kong's employment with Advance, Advance ultimately paid Kong's salary and other employment benefits, through its reimbursement to ATC. Additionally, Kong was the legal representative of the Advance manufacturing facility, and Kong's business cards and e-mail address reflected his employment at Advance.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the First Amended Complaint and therefore deny the same.

20. As factory manager of Advance's manufacturing facility, Kong was a member of the senior management team of Advance and had access to confidential information belonging to Advance.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 of the First Amended Complaint and therefore deny the same.

21. While employed by ATC, Kong executed an employment contract with ATC, entitled Supplementary Employment Contract (the "Contract"). A true and correct copy of the Contract is attached as ExhibitA.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 of the First Amended Complaint and therefore deny the same.

22. The Contract also governed Kong's employment with Advance.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 of the First Amended Complaint and therefore deny the same.

23. The relevant portions of the Contract states as follows:

    (a) The "employee," from the commencing date to the last date of employment, during or outside office hours, all rights of inventions, designs, & know-how which the "employee" develops in relation to the "employer's" field or scope of business belong forever exclusively to the "employer."

    (b) In consideration for "employer" paying employee for developing trade secret, employee agrees not to work for other company producing product or service competing with "employer" during employment & within 12 months after future termination with Advance Thermo Control Ltd.

    (c) "Employee" has duty to protect and to keep confidential "employer's" business confidential information & technical

5

>>> information & rights, written or non-written, including inventions, designs, know-how, parts, products, process, customers, suppliers etc.
>
> (d) "Employee" has the following duties:
>
>> a) to collect back all above-mentioned documents & samples relating to above from sub-contractors or potential buyers for sub-contract or quotation or marketing purposes.
>>
>> b) to return to "employer all copies of above-mentioned documents in "employee's" possession on employment termination.

Exhibit A, § A (1)-(4).

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the First Amended Complaint and therefore deny the same.

24. The non-competition clause in the Contract is reasonable both in scope and duration.

ANSWER: Defendants deny the allegations of Paragraph 24 of the First Amended Complaint.

25. By virtue of Kong's position as factory manager and legal representative of the Advance manufacturing facility, Kong owed to Advance the duty of fidelity, and that Kong would not use or disclose any of Advance's confidential information, such as the Trade Secrets (as defined in paragraph 35, below), upon termination of his employment with Advance.

ANSWER: Defendants deny the allegations of Paragraph 25 of the First Amended Complaint.

26. During Kong's employment with Advance, K&H was a customer of Advance. Also during this time, Koskey was the president and a member of K&H.

ANSWER: Defendants deny the allegations of Paragraph 26 of the First Amended Complaint, except admit the allegations to the extent that they are directed at K&H Corporation.

27. Kong and Koskey became acquainted through K&H's customer relationship with Advance and Kong's employment with Advance.

ANSWER: Defendants deny the allegations of Paragraph 27 of the First Amended Complaint.

28. In 2006, before Kong resigned from his position as a senior manager of Advance, Koskey and Kong developed a plan to jointly form a new company, so that K&H could purchase products from the new company, rather than Advance. Kong and Koskey agreed that this new company would develop new products for K&H, as well as produce products for K&H that K&H had previously contracted to buy from Advance.

ANSWER: Defendants deny the allegations of Paragraph 28 of the First Amended Complaint.

29. On January 15, 2007, months before Kong resigned from Advance, Kong and Koskey incorporated in Hong Kong a new company, Sinoethics-United Limited ("Sinoethics").

ANSWER: Defendants admit the allegations of Paragraph 29 of the First Amended Complaint.

30. Kong and Koskey are the founds and co-owners of Sinoethics, the sole capital contributors to Sinoethics, and the sole shareholders of Sinoethics. Koskey holds 5,000 shares and Kong holds 4,999 shares.

ANSWER: Defendants deny the allegations of Paragraph 30 of the First Amended Complaint.

31. Sinoethics is and has been using a manufacturing facility in China, also named "Sinoethics-United Limited" (the "Sinoethics Manufacturing Facility"). Like the Advance manufacturing facility, the Sinoethics Manufacturing Facility is also located in Qingxi Township, Dongguan City, Dongguan, People's Republic of China.

ANSWER: Defendants deny the allegations of Paragraph 31 of the First Amended Complaint.

32. Kong and Koskey paid for the preparation work on the factory and both have their own quarters in the factory, and Kong signed the lease for the Sinoethics Manufacturing Facility.

ANSWER: Defendants deny the allegations of Paragraph 32 of the First Amended Complaint.

33. Sinoethics competes directly with Advance. Sinoethics manufactures the same types of products as Advance and has manufactured products for long-standing customers of Advance, including K&H.

ANSWER: Defendants deny the allegations of Paragraph 33 of the First Amended Complaint.

34. In breach of the non-competition clause of the Contract, Kong holds the executive position of General Manager at the Sinoethics Manufacturing Facility.

ANSWER: Defendants deny the allegations of Paragraph 34 of the First Amended Complaint.

35. While Kong was still employed at Advance, and thereafter, he misappropriated secret and confidential information and data from Advance for use by Kong and Sinoethics and its affiliates, subsidiaries and related companies ("Sino"), including but not limited to, customer lists, pricing information, proprietary technology, proprietary accounting technology, and costs and other financial information (collectively, the "Trade Secrets").

ANSWER: Defendants deny the allegations of Paragraph 35 of the First Amended Complaint.

36. Kong misappropriated the Trade Secrets with the knowledge of Koskey and K&H.

ANSWER: Defendants deny the allegations of Paragraph 36 of the First Amended Complaint.

37. Included in the Trade Secrets misappropriated by Kong is the proprietary technology for an adjustable-digital-temperature-control-heated dog bed which is currently marketed and sold by K&H under the name "Deluxe Lectro-Kennel" (the "DLK").

ANSWER: Defendants deny the allegations of Paragraph 37 of the First Amended Complaint.

38. Through Koskey, K&H initially pursued the development of the DLK with Advance. In July 2006, Advance provided K&H with price quotations for the DLK. Advance also provided K&H with samples of the DLK, incorporating the electrical and electronic components of the DLK.

ANSWER: Defendants deny the allegations of Paragraph 38 of the First Amended Complaint.

39. Shortly thereafter, Advance was informed that K&H thought that the price of the KLK was too high and that K&H therefore no longer wished to purchase the DLK from Advance.

ANSWER: Defendants deny the allegations of Paragraph 39 of the First Amended Complaint.

40. Instead, without the knowledge or consent of any Advance management other than his confederate Kong, Koskey requested that Kong personally continue to develop the DLK for K&H, even though Kong was still employed at Advance. Upon information and belief, Koskey made this request, knowing that Kong would be using Advance's resources to continue to develop the DLK for K&H.

ANSWER: Defendants deny the allegations of Paragraph 40 of the First Amended Complaint.

41. The Advance resources relied upon by Kong to develop and produce the DLK for K&H include, but are not limited to, the following:

(a) Jack Chen ("Chen"), engineering supervisor with Advance at all relevant times, created the engineering drawings of the base and cover pad of the DLK, in the course of his employment with Advance and at the Advance manufacturing facility.

(b) Chow Kwok Wai ("Chow"), head engineer with Advance at all relevant times, in conjunction with his team of engineers, created the "Schematic Circuit Diagram" for the DLK, in the course of his employment with Advance and at the Advance manufacturing facility.

(c) Prototypes and samples of the DLK were created by employees of Advance in the course of their employment with Advance and at the Advance manufacturing facility.

(d) 3-Dimensional renderings of the DLK were created by employees of Advance manufacturing facility.

(e) Thor Zhang ("Zhang"), an engineer with Advance at all relevant times, created drawings of display boxes for the DLK, in the course his employment with Advance and at the Advance manufacturing facility.

(f) The bill of materials for the DLK was created by employees of Advance in the course of their employment with Advance and at the Advance manufacturing facility.

ANSWER: Defendants deny the allegations of Paragraph 41 of the First Amended Complaint.

42. In or around December 2006, months before his departure from Advance, Kong used Advance's Trade Secrets to produce the molds, software and tooling necessary for the

production of the DLK, but used it to enable Sino, rather than Advance, to produce, sell, and supply the DLK to K&H.

ANSWER:   Defendants deny the allegations of Paragraph 42 of the First Amended Complaint.

43.   Kong, through Sino, while still bound by the terms of the Contract, sold the DLK to K&H without the knowledge or consent of Advance. Proceeds from the sale to K&H of the DLK were not paid to Advance, but instead were paid to Kong and Sino.

ANSWER:   Defendants deny the allegations of Paragraph 43 of the First Amended Complaint.

44.   K&H continues to sell the DLK today and it is advertised on their website. On information and belief, the DLK continues to be manufactured at the Sinoethics Manufacturing Facility, and K&H continues to purchase the DLK from Sino.

ANSWER:   Defendants deny the allegations of Paragraph 44 of the First Amended Complaint.

45.   In 2006, while Kong was still employed at Advance, Kong, on behalf of Sino, and at the behest of Koskey, misappropriated the tooling and molds for a heated plant pot (the "Plant Heater"). Koskey and K&H brought the buyer of the Plant Heater to Kong and Sino, and acted as broker through the manufacturing and sales process of the Plant Heather. Kong and Sino then sold the Plant Heather without the knowledge or consent of Advance, and without turning the sales proceeds over to Advance.

ANSWER:   Defendants deny the allegations of Paragraph 48 of the First Amended Complaint.

46.   In 2006 and 2007, while Kong was still employed by Advance, Kong developed the proprietary technology and components for, and misappropriated the tooling and molds for, a stainless steel dog bowl heater (the "Dog Bowl Heather"), at the direction of Koskey and K&H and on behalf of Sino. The Dog Bowl Heater was developed, manufactured, and sold without the knowledge or consent of Advance, at the Advance facility and using Advance resources. Proceeds from the sale of the Dog Bowl Heater to K&H were directed to Kong and Sino, rather than Advance.

ANSWER:   Defendants deny the allegations of Paragraph 46 of the First Amended Complaint.

47.   Without the consent of Advance, Kong and Sino also used tooling and molds owned by Advance to make parts to fill orders placed by K&H with Sino.

ANSWER: Defendants deny the allegations of Paragraph 47 of the First Amended Complaint.

48. Kong's incorporation and operation of Sino as a competitor of Advance, and Kong's use of the Trade Secrets in the operation of Sino and are in violation of the Contract.

ANSWER: Defendants deny the allegations of Paragraph 48 of the First Amended Complaint.

## COUNT I
### Violation of the Illinois Trade Secrets Act

49. Plaintiff re-alleges paragraphs 1-48 as paragraph 49 of its Count I.

ANSWER: In response to the allegations of Paragraph 49 of the First Amended Complaint, Defendants hereby incorporate their responses to each previously numbered averment as if fully set forth out herein.

50. The Trade Secrets used in the manufacture of, among other products, the DLK, the Plant Heater and the Heated Dog Bowl, are trade secrets under section 2 of the Illinois Trade Secrets Act (the "Act").

ANSWER: Defendants deny the allegations of Paragraph 50 of the First Amended Complaint.

51. Advance's customer lists, pricing information, proprietary accounting technology, and costs and other financial information are also trade secrets under section 2 of the Act.

ANSWER: Defendants deny the allegations of Paragraph 51 of the First Amended Complaint.

52. Kong's misappropriation and use of the Trade Secrets to manufacture, among other products, the DLK, the Plant Heater and the Heated Dog Bowl, is a violation under section 2 of the Act.

ANSWER: Defendants deny the allegations of Paragraph 52 of the First Amended Complaint.

53. Kong's use of the Trade Secrets, including the customer lists, pricing information, proprietary accounting technology, and costs and other financial information for the his [sic] own benefits and the benefit of Sino is also a violation under section 2 of the Act.

ANSWER:   Defendants deny the allegations of Paragraph 53 of the First Amended Complaint.

54.   Through sales of the DLK, the Plant Heater and the Heated Dog Bowl, among other things, Koskey is using the Trade Secrets to benefit K&H and by doing so, Koskey and K&H are using the Trade Secrets in K&H's business in violation of the Act.

ANSWER:   Defendants deny the allegations of Paragraph 54 of the First Amended Complaint.

55.   Koskey knew or had reason to know that he and K&H were using the misappropriated Trade Secrets in K&H's business.

ANSWER:   Defendants deny the allegations of Paragraph 55 of the First Amended Complaint.

56.   Koskey and K&H have willfully and maliciously misappropriated the Trade Secrets for their own gain.

ANSWER:   Defendants deny the allegations of Paragraph 56 of the First Amended Complaint.

57.   Advance has been damaged by Koskey and K&H's misappropriation of its Trade Secrets in an amount in excess of $75,000.00.

ANSWER:   Defendants deny the allegations of Paragraph 57 of the First Amended Complaint.

## COUNT II
### Tortious Interference With Contract

58.   Plaintiff re-alleges paragraphs 1-57 as paragraph 58 of its Count II.

ANSWER:   In response to the allegations of Paragraph 58 of the First Amended Complaint, Defendants hereby incorporate their responses to each previously numbered averment as if fully set forth out herein.

59.   On information and belief, as early as 2006, Koskey and K&H knew or should have known that Kong was then employed by Advance and knew of the Contract and its terms.

ANSWER:   Defendants deny the allegations of Paragraph 59 of the First Amended Complaint.

60. On information and belief, in 2006 and thereafter, Koskey and K&H knew or should have known that, as an employee of Advance, Kong independently owed Advance a duty of loyalty and confidentiality.

ANSWER: Defendants deny the allegations of Paragraph 60 of the First Amended Complaint.

61. Specifically, Koskey and K&H knew or should have known that Kong was prohibited from using assets of Advance for the benefit of Sino.

ANSWER: Defendants deny the allegations of Paragraph 61 of the First Amended Complaint.

62. Additionally, Koskey and K&H knew or should have known that the creation of Sino while Kong was still employed with Advance was in breach of the Contract and in breach of Kong's duty of loyalty and confidentiality.

ANSWER: Defendants deny the allegations of Paragraph 62 of the First Amended Complaint.

63. By ordering products directly from Kong in 2006, Koskey and K&H intentionally interfered with the Contract and unjustifiably induced Kong to breach the Contract and to breach his duty of loyalty and confidentiality.

ANSWER: Defendants deny the allegations of Paragraph 63 of the First Amended Complaint.

64. Kong breached the Contract and his duties when he, for his own personal benefit, supplied Koskey and K&H with products manufactured using the Trade Secrets, including but not limited to the DLK and the Heated Dog Bowl, in contravention of the requirement under the Contract that "all rights of inventions, designs, & know-how which the "employee" develops in relation to [Advance's] field or scope of business belong forever exclusively to [Advance]." *See* Exhibit A, §A(1).

ANSWER: Defendants deny the allegations of Paragraph 64 of the First Amended Complaint.

65. The Contract's non-compete provision prohibits Kong from working for any "other company producing product or service competing with [Advance] during employment & within 12 months after future termination with [Advance]." Exhibit A, § A(2).

ANSWER: Defendants deny the allegations of Paragraph 65 of the First Amended Complaint.

66.    By working with Kong to establish Sino to directly compete with Advance while Kong was still employed with Advance, Koskey intentionally interfered with the Contract and unjustifiably induced Kong to breach the Contract.

ANSWER:    Defendants deny the allegations of Paragraph 66 of the First Amended Complaint.

67.    By continuing to operate Sino with Kong, Koskey continues to intentionally interfere with the Contract and unjustifiably induce Kong's continued and ongoing breach of the Contract.

ANSWER:    Defendants deny the allegations of Paragraph 67 of the First Amended Complaint.

68.    Advance has been damaged by Kong's past and ongoing breaches of the Contract in an amount in excess of $75,000.00.

ANSWER:    Defendants deny the allegations of Paragraph 68 of the First Amended Complaint.

## COUNT III
### Civil Conspiracy

69.    Plaintiff re-alleges paragraphs 1-68 as paragraph 69 of its Count III.

ANSWER:    In response to the allegations of Paragraph 69 of the First Amended Complaint, Defendants hereby incorporate their responses to each previously numbered averment as if fully set forth out herein.

70.    Kong and Koskey agreed to form Sino.

ANSWER:    Defendants admit the allegations of Paragraph 70 of the First Amended Complaint.

71.    Sino operates by unlawful means, namely the theft of the Advance's Trade Secrets and Kong's breach of the Contract.

ANSWER:    Defendants deny the allegations of Paragraph 71 of the First Amended Complaint.

72.    Sino continues to improperly and illegally utilize the Trade Secrets for its own financial gain.

14

ANSWER: Defendants deny the allegations of Paragraph 72 of the First Amended Complaint.

73. In order to operate Sino, Kong stole Trade Secrets and breached the Contract.

ANSWER: Defendants deny the allegations of Paragraph 73 of the First Amended Complaint.

74. Kong and Koskey have used Advance's Trade Secrets to conduct the business of Sino.

ANSWER: Defendants deny the allegations of Paragraph 74 of the First Amended Complaint.

75. Koskey and K&H knew that Sino was using the misappropriated Trade Secrets, and, in fact, upon information and belief, encouraged Kong to misappropriate the Trade Secrets for Sino, Koskey, and K&H's benefits.

ANSWER: Defendants deny the allegations of Paragraph 75 of the First Amended Complaint.

76. Because Koskey is involved in the continued operation of Sino, he is liable as a civil conspirator for the damages resulting for the misappropriation of the Trade Secrets as well as the damages resulting from Kong's breach of the Contract.

ANSWER: Defendants deny the allegations of Paragraph 76 of the First Amended Complaint.

77. Additionally, K&H is liable as a civil conspirator because K&H, through Koskey, conspired with Kong to misappropriate proceeds from the sale of Advance products which should have gone to Advance.

ANSWER: Defendants deny the allegations of Paragraph 77 of the First Amended Complaint.

78. K&H, among other things, knowingly abandoned pursuit of the DLK with Advance, and instead convinced Kong to produce the DLK with Advance's resources, so that K&H could get a better price as a result of Kong and Koskey's forming Sino.

ANSWER: Defendants deny the allegations of Paragraph 78 of the First Amended Complaint.

79. K&H also began purchasing additional products from and pursuing additional projects through Sino which it had previously purchased from Advance, knowing that Sino was utilizing materials and Trade Secrets which had been misappropriated by Kong and Koskey from Advance. The products and projects include, but are not limited to, the Plant Heater and the Heated Dog Bowl.

ANSWER:   Defendants deny the allegations of Paragraph 79 of the First Amended Complaint.

## **AFFIRMATIVE DEFENSES**

A.   The Illinois Trade Secret Act does not apply to the transactions alleged in the First Amended Complaint.

B.   If the Illinois Trade Secret Act were to apply, all common law causes of action, Counts II and III, are preempted by the Act.

C.   The nominal Plaintiff is not the real party in interest to the transactions alleged in the First Amended Complaint as it is not a party to the contract being sued upon.

D.   The nominal Plaintiff does not have standing to assert the claims alleged in the First Amended Complaint as it is not a party to the contract being sued upon.

E.   This Court does not have personal jurisdiction over the Defendants.

F.   Venue is not properly lodged in this Court as none of the Defendants is subject to the personal jurisdiction of this Court and therefore does not reside in this Court for purposes of establishing venue in this action.

G.   Plaintiff's claims are barred from asserting the claims of the First Amended Complaint or said claims are diminished by Plaintiff's failure to undertake reasonable efforts to mitigate any damages.

H.   Plaintiff's claims are barred by the doctrine of unclean hands.

**FOR THE FOREGOING REASONS,** Defendants James D. Koskey, Jr., Koskey & Howard, Inc. f/k/a K&H Manufacturing, Inc. and K&H Manufacturing, LLC, respectfully

request that the Court enter a judgment in their favor and against Plaintiff and such other relief that is just and appropriate.

Dated: April 18, 2008

**JAMES D. KOSKEY, JR., KOSKEY & HOWARD, INC. f/k/a K&H MANUFACTURING, INC. and K&H MANUFACTURING, LLC**

By:   /s/ John D. Burke
       One of Their Attorneys

John D. Burke (ARDC No. 06203918)
**ICE MILLER LLP**
200 West Madison, Suite 3500
Chicago, Illinois 60606
(312) 726-8148

C/62028.1